**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **1. LEON L. HANDY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| **v.** | ) **CIV-10-** |
| | ) |
| **1. U.S. FOODSERVICE, INC.,** | ) |
| | ) **JURY TRIAL DEMANDED** |
| **Defendant.** | ) **ATTORNEY LIEN CLAIMED** |

## COMPLAINT

**COMES NOW THE PLAINTIFF**, Leon L. Handy, and for his Complaint against the above-named Defendant, alleges and states as follows:

## PARTIES

1. Plaintiff Leon L. Handy is an adult male residing in Oklahoma County, Oklahoma.

2. U.S. Foodservice, Inc. is a corporation conducting business in Oklahoma County, Oklahoma.

## JURISDICTION AND VENUE

3. Plaintiff's causes of action are based on (1) racial discrimination, harassment and retaliation in the workplace, prohibited by 42 U.S.C. § 1981; (2) violations of Oklahoma state law in the form of a *Burk* tort, as embodied in the Oklahoma Anti-Discrimination Act and Art. 5, § 46 of the Oklahoma Constitution in the form of race discrimination, harassment and retaliation for complaints of race discrimination; and (3) negligent supervision, training and retention in violation of Oklahoma state law.

4. Jurisdiction over Plaintiff's federal causes of action is vested in this Court under 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiff's corresponding state law claims as they arise out of the same core of operative facts as the

federal claims and jurisdiction over them is vested in this Court under 28 U.S.C. § 1367(a).

5. The actions complained of herein occurred in Oklahoma County, Oklahoma and Defendant may be served in said county. Wherefore, venue is proper in this Court under 28 U.S.C. § 1391(b).

## STATEMENT OF FACTS

6. Plaintiff, who is African-American, was hired by Defendant on or about September 21, 2009, to work as an Order Selector in Defendant's warehouse.

7. Throughout his employment, Plaintiff was subjected to racial discrimination and racially offensive comments by Head Supervisor Chris Meyers (who is Caucasian). For instance, Meyers repeatedly failed to refer to Plaintiff by his name, opting instead to refer to Plaintiff and other African-American employees as "Bubba". As Plaintiff found this term racially offensive, Plaintiff told Meyers that his name was not "Bubba". However, Meyers continued to call Plaintiff by that name.

8. Further, Meyers treated Plaintiff less favorably than Caucasian employees. Plaintiff's rate of pay was determined by the percentage of accuracy of the order pulls he made throughout his shift. If two (2) or more orders were pulled incorrectly during one (1) week, Plaintiff's pay was decreased for that week based on the number of errors made.

9. The location where Plaintiff worked was closed on April 2 and 3, 2010 and Plaintiff took a vacation day on April 4, 2010. Upon returning to work on or about April 5, 2009, Plaintiff discovered that he had made an error on April 1, 2010, which would result in a decrease in pay for the week. Had Plaintiff been at work on April 4, 2010, Plaintiff would have had the opportunity to resolve his errors and his pay percentage would not have been decreased. Plaintiff asked Meyers to resolve such errors and explained why he was not at work to fix the error. Despite having removed such errors for Caucasian employees in

similar situations, such as order selector Blake (last name unknown), Meyers refused to resolve such errors for Plaintiff, stating that Plaintiff needed to "suck it up and deal."

10. Due to Meyers' treatment, Plaintiff reported Meyers' conduct to Vice President of Human Resources Al Donovan (who is Caucasian). Specifically, Plaintiff told Donovan that he wanted to lodge a complaint because Meyers gave favorable treatment to Caucasian employees over African American employees. Plaintiff further told Donovan about Meyers' refusal to resolve Plaintiff's order pulling error. Donovan told Plaintiff that the complaint would be investigated. However, Donovan never followed up with Plaintiff about this complaint, and Plaintiff was never informed of any findings stemming from an investigation.

11. In or around late July 2010, Plaintiff engaged in a consensual relationship with a Caucasian female co-worker, Kristi Grissom. After discovering that Grissom was apparently involved with other employees of Defendant, Plaintiff discontinued his relationship with Grissom in or around early August 2010.

12. In or around August 2010, Plaintiff was suspended without pay for three (3) days by Meyers for alleged poor attendance. Plaintiff informed Meyers that Plaintiff provided Defendant with a note from his doctor stating Plaintiff was unable to attend work due to illness, however, Plaintiff was still suspended. And, although Meyers stated that such suspension was written by Supervisor Josh Church (who is Caucasian), upon information and belief, Meyers was the decision-maker for such suspension.

13. On or about August 29, 2010, Plaintiff was told by Order Selector Darnell Dukes, who is African American, that Grissom told Dukes that Plaintiff had told lies about Dukes to Grissom. Dukes further stated that Grissom had said Plaintiff told such lies in an effort to prevent Dukes from dating Grissom because Plaintiff wanted to date Grissom. Thereafter, Plaintiff and Dukes approached Grissom about her false accusations. During the

conversation, Plaintiff asked Grissom to stop telling lies about Plaintiff to Dukes.

14. On or about September 1, 2010, Supervisor Chris Stout (who is Caucasian) instructed Plaintiff to leave Grissom alone. Specifically, Stout told Plaintiff that Grissom reported Plaintiff, Dukes, and Leroy Hooks, who is African American, were teasing Grissom. Plaintiff followed this directive from Stout and avoided any further contact with Grissom.

15. On or about September 9, 2010, Plaintiff was informed by Chris Stout and Josh Church that Plaintiff was suspended without pay. Stout stated that Meyers instructed Stout to send Plaintiff home and that Grissom had allegedly lodged a sexual harassment complaint against Plaintiff stemming from the August 29, 2010 discussion.

16. While on suspension, Plaintiff called Donovan several times to inquire about his employment status. Plaintiff did not receive a call back from Donovan for over one (1) week. Upon speaking with Donovan, Plaintiff informed Donovan of his prior consensual relationship with Grissom and that during his discussion with Grissom, Plaintiff merely asked that she stop telling lies about Plaintiff. Plaintiff further told Donovan that Grissom had sent naked pictures of herself to Plaintiff during their relationship.

17. On or about September 24, 2010, while Plaintiff was still on suspension without pay, Plaintiff was terminated via voice mail message from Donovan. Donovan did not give a reason for Plaintiff's termination in the voice mail.

18. As a direct and proximate result of Defendant's actions, Plaintiff has suffered the injuries described hereafter.

**COUNT I**
**42 U.S.C. § 1981**

For his first cause of action against, Plaintiff incorporates all prior allegations and further alleges and states as follows:

19. The matters alleged above constitute violations of 42 U.S.C. § 1981 in the

nature of race-based discrimination, harassment, and retaliation, which has affected Plaintiff's employment in both tangible and intangible aspects of the job.

20. As damages, Plaintiff has suffered lost earnings, past and future, emotional distress and other equitable and compensatory damages allowed by the Civil Rights Act of 1991.

21. Because the actions of the Defendant were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

**COUNT II**
***Burk* Tort - Race**

For his second cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

______22. The conduct alleged above constitutes a *Burk* tort, as embodied in the Oklahoma Anti-Discrimination Act ("OADA") and Article 5, § 46 of the Oklahoma Constitution in the form of race discrimination, harassment and retaliation.

23. As a direct and proximate result of Defendant's actions, Plaintiff has suffered injuries and is entitled to recovery of all damages or other relief allowed by the OADA, including but not limited to lost wages (past and future), emotional distress damages, punitive damages, and attorney's fees and costs.

**COUNT III**
**NEGLIGENCE**

For his third cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

24. The acts of the Defendant as described above constitute the tort of negligent supervision, training and retention.

25. Defendant had a duty to properly supervise and train its employees to refrain

from engaging in unlawful discrimination, harassment and retaliation.

26. Defendant breached its duty.

27. At the critical time of the tortious incidents described herein, Defendant knew or should have known its employees would create an undue risk of harm to others.

28. As a direct and proximate cause of Defendant's negligence, Plaintiff was harmed.

29. As damages, Plaintiff is entitled to all damages allowed by state law.

**PRAYER**

**WHEREFORE** Plaintiff respectfully prays that this Court enter judgment in favor of the Plaintiff and against the Defendant and award compensatory damages, punitive damages, together with any appropriate equitable relief, pre- and post-judgment interest, costs and attorney's fees.

Respectfully submitted this 1st day of December, 2010.

s/ Jana B. Leonard

**JANA B. LEONARD, OBA# 17844**
**SHANNON C. HAUPT, OBA #18922**
**LAUREN W. JOHNSTON, OBA # 22341**
**LEONARD & ASSOCIATES, P.L.L.C.**
**8265 S. WALKER**
**Oklahoma City, Oklahoma 73139**
**(405) 239-3800 (telephone)**
**(405) 239-3801 (facsimile)**
**leonardjb@leonardlaw.net**
**haupts@leonardlaw.net**
**johnstonlw@leonardlaw.net**

**ATTORNEY LIEN CLAIMED**
**JURY TRIAL DEMANDED**